IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

FEBA MARIE JAMES, :
 :
    Plaintiff, :
 :
vs. :
 : CIVIL ACTION 13-0087-M
CAROLYN W. COLVIN, :
Commission of Social Security, :
 :
    Defendant. :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 13). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 22). Oral argument was waived in this action (Doc. 21). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th

1

Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the most recent administrative hearing, Plaintiff was forty-five years old, had completed a ninth-grade education (Tr. 50), and had no previous work experience (*see* Tr. 37). In claiming benefits, Plaintiff alleges disability due to cardiomegaly, hypertension, obesity with mechanical back pain, history of gastroesophageal reflux disease, history of pulmonary embolism, recurrent major depressive disorder, and panic attacks without agoraphobia (Doc. 13 Fact Sheet).

The Plaintiff filed an application for SSI on May 2, 2007 (Tr. 250-65). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although James had no past relevant work, there were light work jobs that she could perform (Tr. 21-38). Plaintiff requested review of the hearing decision (Tr. 15) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not

2

supported by substantial evidence.  Specifically, James alleges that:  (1) The ALJ's findings regarding James's residual functional capacity (hereinafter *RFC*) is not supported by the evidence; and (2) the ALJ failed to properly evaluate her non-compliance with prescribed mental health treatment (Doc. 13).  Defendant has responded to—and denies—these claims (Doc. 17).

Plaintiff's first claim is that the ALJ's findings regarding her RFC are not supported by substantial evidence.  The Court notes that the ALJ is responsible for determining a claimant's RFC.  20 C.F.R. § 416.946(c) (2013).  The Court also notes that the social security regulations state that Plaintiff is responsible for providing evidence from which the ALJ can make an RFC determination.  20 C.F.R. § 416.945(a)(3).

Following his review of all of the medical evidence, the ALJ made the following findings:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b) except the claimant can stand and/or walk 2 hours in an 8-hour workday.  She must periodically alternate sitting and standing to relieve pain or discomfort.  She can frequently push and pull with her legs.  She can occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl; but never climb ladders, ropes or scaffolds.  She must avoid even moderate exposure to extreme cold, extreme heat, wetness, humidity, vibration, fumes, odors, dust, gases and poor ventilation and

3

> avoid all exposure to hazardous machinery
> and unprotected heights.  Mentally, she has
> a mild limitation in her ability to use
> judgment in simple one or two step work-
> related decisions; mild to moderate
> limitation in her ability to understand,
> remember and carry out simple one and two
> step instructions; moderate limitation in
> her ability to respond appropriately to
> customers or other members of the general
> public, to respond appropriately to
> supervision, to respond appropriately to co-
> workers, to respond to customary work
> pressures, and to maintain attention,
> concentration or pace for periods of at
> least two hours; and marked limitation in
> her ability to use judgment in detailed or
> complex work-related decisions and to
> understand, remember and carry out detailed
> or complex instructions.

(Tr. 25-26).

James raises two objections in bringing her claim that the ALJ's RFC is unsupported by the evidence.  One concern is that no physician of record provided any RFC analysis (Doc. 13, pp. 6-8).  The Court again notes, however, that James is responsible for providing evidence from which the ALJ can make an RFC determination.  Furthermore, Plaintiff has the burden of proving that she is disabled.  *See* 20 C.F.R. § 416.912(a) and (c); *see also Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).  James, however, has pointed to no evidence demonstrating that she is unable to perform within the RFC framework determined by the ALJ.  As the record exceeds one thousand pages, the Court finds it unlikely that a decision could not be reached from the

4

available evidence. Plaintiff has provided this Court with no reason to find otherwise.

James's second complaint, in raising this claim, arises from a concern that the ALJ gave significant weight to the opinions of Dr. James Anderson, a medical expert (hereinafter *ME*), who testified at the first evidentiary hearing even though almost two hundred pages of medical evidence were added to the record following his testimony (Doc. 13, pp. 4-5).

In his decision, the ALJ summarized the medical evidence of record (Tr. 28-35); the Court notes James has asserted no deficiencies in that review (*see* Doc. 13, pp. 4-8). Following that summary, the ALJ noted that he gave substantial evidentiary weight to the opinions expressed by ME Anderson who testified at the first hearing, finding it "generally consistent with the overall evidence of record" (Tr. 35). Dr. Anderson testified that James's impairments were as follows:

> This 43-year-old lady is obese, 261 pounds with hypertension, asymptomatic. She has a history of pulmonary embolus in May of '07, treated successfully without any recurrence. She is in the permanent anticoagulation state due to a history of pulmonary emboli. She has chronic pelvic pain due to gynecological problems with vaginal bleeding, treated with parenteral iron because she was intolerant to oral iron. And she has chronic chest pain probably musculoskeletal, treated symptomatically, as well as leg and back

5

> pain, probably musculoskeletal in nature,
> treated symptomatically.

(Tr. 110-11). The ME went on to testify that Plaintiff's medications were medically necessary, that her physical impairments did not meet or equal any of the Listings, and that the combination of her impairments would limit her to light work activity with a sit/stand option (Tr. 111-12). Upon questioning by James's attorney, Dr. Anderson stated that general medical thought would lay the blame for Plaintiff's leg and back pain on her obesity, but development of medical information regarding her pain would be helpful (Tr. 112-13).

Plaintiff poses no objections to Dr. Anderson's specific conclusions (*see* Doc. 13, pp. 4-8). Rather, James's complaint is that there are nearly two hundred pages of medical evidence that was entered into the record after his testimony that he did not consider (Doc. 13, pp. 4-5). However, the Court notes that Plaintiff points to no medical evidence, either new or old, that contradicts—or is in conflict with—Dr. Anderson's testimony.

The Court notes that even though the ME did not get the opportunity to review some of the evidence before reaching his conclusions, the ALJ considered the additional evidence in reaching his determination. Plaintiff has objected to this RFC finding because it is more restrictive than the limitations found by Dr. Anderson (Doc. 13, p. 5) ("Anderson's testimony at

the first hearing did not even address many of the limitations that were assessed by the ALJ"). The Court suggests that this is an indication of the ALJ's thorough examination of the medical evidence, giving James the benefit of the doubt as to some of her impairments.

Ultimately, though, the Court notes that James points to no medical evidence that questions the ALJ's RFC findings. As the ALJ is responsible for determining a claimant's RFC and James has failed to direct this Court to any evidence that disagrees with his RFC conclusion, the Court finds substantial evidence to support that finding. Plaintiff's claim otherwise is without merit.

James's second claim is that the ALJ failed to properly evaluate her non-compliance with prescribed mental health treatment. Plaintiff asserts that she was not able to afford her medications at times and had not had any health insurance for years (Doc. 13, p. 10; *cf.* Tr. 51, 57).

In his decision, the ALJ found that although James's impairments could be expected to cause symptoms, her "statements concerning the intensity persistence and limiting effects of these symptoms are not credible" (Tr. 27-28). As support for this conclusion, the ALJ noted the following inconsistencies in the record:

7

> (1) The claimant has attempted to portray
> herself as being more intellectually
> deficient than in reality.  She testified
> that she only completed the 9th grade in
> school.  However, in her Disability Report,
> she reported having completed the 11th grade
> (Exhibit B-2E).  (2) The claimant blatantly
> malingered during a consultative
> psychological evaluation.  On July 9, 2009,
> Dr. Blanton, Ph.D., administered the
> Wechsler Adult Intelligence Scale-IV to
> determine claimant's level of cognitive
> functioning.  He found her test scores
> invalid, noting that she appeared to
> deliberately do poorly and put no effort
> into her work.  For example, when asked the
> shape of a ball, she replied "It's a
> square."  When asked to name the President
> of the United States, she replied "Ronald
> Reagan."  When asked the number of legs on a
> dog, she replied "12" (Exhibit B-27F).  (3)
> The claimant testified that, since 2008, she
> has not cleaned, cooked, swept, mopped, made
> beds, washed clothes, washed dishes, taken
> out the garbage, worked out in the yard or
> shopped for groceries.  The undersigned
> finds her testimony less than honest given
> that the medical record does not support
> disabling impairments and in light of her
> malingering during a consultative
> examination.  (4) The claimant testified
> that she has not driven a car since 1999,
> but admits to having a driver's license.
> (5) The claimant has denied being self-
> employed in the year 2007, but an income
> query shows self-employment earnings of
> $10,759.00 for that year (Exhibit B-11D).
> There is no evidence that suggests the
> claimant has attempted to correct her tax
> record with the IRS.

(Tr. 35).  The ALJ also made specific findings regarding James's noncompliance with her prescribed medical treatment.  Those findings are as follows:

8

> [The Cahaba Center for Mental Health]
> progress notes indicate that the claimant
> has been chronically noncompliant with
> taking her medications and, as a result she
> has had a recurrence of symptoms (See
> Exhibit B-12F, pages 3 and 4; Exhibit B-20F,
> page 2; Exhibit B-28F, pages 2 and 3; and
> Exhibit B-32F, page 4). However, when she
> takes her medications, her symptoms improve.
> On February 26, 2008, her psychiatrist noted
> that she had been noncompliant with
> medications in the past, but that day she
> reported being compliant with medications
> since her last appointment and was doing
> well on her medications with no current
> depressive symptoms, no psychosis, sleep and
> appetite within normal limits (WNL), no
> suicidal or homicidal ideation, euthymic
> mood, and appropriate affect (See Exhibit B-
> 12F, page 3). On August 19, 2008, her
> psychiatrist noted that her symptoms had
> improved with medication compliance (Exhibit
> B-20F, page 3).

(Tr. 33).

The Court notes that Social Security regulations state that "[i]n order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work." 20 C.F.R. 1530(a) (2013). The regulation goes on to state that "[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits." 20 C.F.R. § 404.1530(b) (2008); *see also Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988).

The Court has reviewed the pages cited by the ALJ as

9

evidence of James's non-compliance (Tr. 598-99, 769, 878-79, 985) and notes that although the doctors talked to her about not following their orders, she offered no explanation for her failure. Plaintiff has cited no evidence in the medical record, save for her testimony at the hearing before the ALJ, that she has informed her physicians of her poverty. James has correctly cited law holding that a claimant's failure to follow a prescribed treatment regimen will not prevent that claimant's receipt of benefits if the reason for non-compliance is poverty. *See Dawkins*, 848 F.2d at 1213. However, Plaintiff's failure to explain to her doctors that she is not following their orders because she cannot afford to do so leads this Court to believe that her claim now is less than credible. This belief is bolstered by the ALJ's finding of non-credibility, a finding unchallenged by Plaintiff except in this particular aspect. The Court finds substantial support for the ALJ's conclusion that James was not a reliable witness in presenting herself to the ALJ and further finds that her claim of poverty for non-compliance is not reliable either.

Plaintiff has raised two claims in brining this action. Both are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the

Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.

DONE this 12th day of November, 2013.

<span style="margin-left:3em">s/BERT W. MILLING, JR.<br>UNITED STATES MAGISTRATE JUDGE</span>